# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Ionlake, LLC, | Civ. No. 20-640 (SRN/BRT) |
| Plaintiff, | |
| v. | |
| Wade A. Girard, | |
| Defendant and<br>Third-Party Plaintiff, | **ORDER** |
| v. | |
| Derrick Girard, | |
| Defendant and<br>Third-Party Defendant. | |

J. Matthew Berner, Esq., and John F. Cameron, Esq., Cameron Law Office, Chartered, counsel for Plaintiff.

Peter C. Brehm, Esq., Peter C. Brehm & Associates; Sean A. Shiff, Esq., Sean A. Shiff, PLLC; and Steven E. Ness, Esq., Business Law Center, PLC, counsel for Defendant Wade Girard.

Patrick J. Rooney, Esq., Fafinski Mark & Johnson, P.A., counsel for Defendant Derrick Girard.

This matter is before the Court on Third-Party Defendant Derrick Girard's Motion to Amend Counterclaim to Plead Punitive Damages Against Wade Girard. (Doc. No. 82.) A hearing was held on the motion on February 2, 2021. (Doc. No. 90.) For the reasons set forth below, the motion is granted.

## BACKGROUND

Plaintiff Ionlake, LLC ("Ionlake") is a company that was co-founded in 2017 by Derrick Girard and his uncle Wade Girard. (Doc. No. 84, Decl. of Patrick J. Rooney in Supp. of Derrick Girard's Mot. ¶ 25, Ex. X, Proposed Am. Counterclaim ("PACC") ¶ 3.) In this lawsuit, Ionlake and Derrick Girard assert that the copyright to MyRepChat, a software application (the "Software"), is owned or co-owned by Ionlake; Wade Girard asserts that he is the exclusive owner of MyRepChat. The MyRepChat application is a tool that allows financial advisors and their clients to exchange secure text messages in an environment that is compliant with industry standards, regulations, and laws. (PACC ¶¶ 1–2.)

Ionlake sued Wade Girard seeking a declaratory judgment over the ownership of the copyright. (Doc. No. 1, Compl.) Wade Girard disputes Ionlake's claim of ownership, seeks a declaration that he is the exclusive owner of MyRepChat, and asserts third-party claims against Derrick Girard for breaching statutory and fiduciary duties. (Doc. No. 36, Answer/Third-Party Compl.) Derrick Girard, as third-party Defendant to Wade Girard's counterclaims, disputes Wade's claims, and asserts his own counterclaims against Wade for common law fraud, fraudulent inducement, and breach of fiduciary duty, among other claims, including Minnesota statutory-based claims. (Doc. No. 40, Answer/ Countercl.; *see also generally* PACC.)

Relevant here, in support of Derrick Girard's claims against Wade, Derrick alleges that the main asset of Ionlake is the MyRepChat software application and that the Software was developed for the sole and exclusive benefit and ownership of Ionlake.

2

(PACC ¶¶ 3, 34 ("The sale of licenses for the use of the Software is the sole source of all of Ionlake's revenue.")) Derrick claims that in early 2017, Wade induced him to join Ionlake as a governor, member, and Chief Executive Officer, to invest $100,000 of his own money into the company, assist Wade for three years in developing, enhancing, and selling the Software, and by representing and promising Derrick that the Software would be the product of Ionlake. (*See* PACC ¶ 81.) Derrick alleges that after a disagreement with Wade in 2019 regarding unequal distributions Wade had been taking from Ionlake, Wade deceitfully filed a copyright application for the Software with the United States Copyright Office, claiming that Wade (and not Ionlake, as previously agreed) was the author and sole, exclusive owner of the software. (PACC ¶¶ 10, 81.) Derrick alleges that after he protested Wade's actions, Wade tried to destroy Ionlake and harm Derrick by attempting to take Ionlake's greatest source of revenue for himself by contacting Ionlake's largest customers claiming that he personally owned the Software and forming a separate company to make money from the selling of licenses to clubs and organizations using the Software. (PACC ¶¶ 9, 11–12, 67, 81.) Derrick alleges that Wade's actions have caused Derrick harm and that Wade acted with deliberate disregard for Derrick's rights. (*See* PACC ¶¶ 154, 158.)

## DISCUSSION

Based on the above facts and many more alleged in his Proposed Amended Counterclaim, Derrick Girard seeks to amend his Counterclaim to assert a claim for

3

punitive damages. He asserts he should be afforded an opportunity to do so pursuant to Federal Rule of Civil Procedure 15.[1] Wade opposes Derrick's motion.

Except where amendment is permitted as a matter of course, under Federal Rule of Civil Procedure 15, "a party may amend its pleading only with the opposing party's written consent or the court's leave [and] [t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Despite this liberal standard, a party does not have an absolute right to amend. *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008). It is well established that a motion to amend should be denied if "there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005) (quotations omitted). The determination as to whether to grant leave to amend pursuant to Federal Rule of Civil Procedure 15 is

---

[1] Although Derrick argues that Rule 15 governs, Derrick asserts that he also has met his burden under Minn. Stat. § 549.191—Minnesota's state procedural law—to assert punitive damages. In conformity with other recent decisions in this District, the undersigned concludes that Rule 15 and not Minn. Stat. § 549.191 controls the adjudication of motions to amend. *See, e.g.*, *In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, No. 15-2666 (JNE/FLN), 2017 WL 5187832 (D. Minn. July 27, 2017) (denying Plaintiff's motion to amend to plead punitive damages under a Federal Rule of Civil Procedure 15 framework). With that said, the Court notes that Derrick has met the evidentiary burden under § 549.191 as well. In addition, the Court notes that even though Rule 15 does not require the same evidentiary support as § 549.191, under the Federal Rules, pleadings must meet the requirements in Federal Rule of Civil Procedure 11(b). *See* Fed. R. Civ. P. 11(b)(3) ("By presenting to the court a pleading . . . an attorney . . . certifies that . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]").

4

within the sound discretion of the court. *See, e.g.*, *Kozlov v. Associated Wholesale Grocers, Inc.*, 818 F.3d 380, 394 (8th Cir. 2016).

Although the Federal Rules establish the process for determining whether to grant a motion to amend to add a claim for punitive damages, Minn. Stat. § 549.20 establishes the substantive legal standard for liability for punitive damages under Minnesota law. The statute provides as follows:

> (a) Punitive damages shall be allowed in civil actions only upon clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others.
>
> (b) A defendant has acted with deliberate disregard for the rights or safety of others if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights or safety of others and:
>
>> (1) deliberately proceeds to act in conscious or intentional disregard of the high degree of probability of injury to the rights or safety of others; or
>>
>> (2) deliberately proceeds to act with indifference to the high probability of injury to the rights or safety of others.

Minn. Stat. § 549.20. The Court is informed by this substantive standard when considering whether Derrick Girard's Proposed Amended Counterclaim has alleged a plausible claim for punitive damages.

## ANALYSIS

Derrick Girard seeks leave to amend his Counterclaim to add a claim for punitive damages for alleged violations of Minnesota common law (i.e., "breach of fiduciary duty and common-law fraud claims"). (*See* Doc. No. 83, Derrick Girard's Mem. of Law in

5

Supp. of Mot. for Leave to Amend ("Derrick's Mem.") 22.) Therefore, the substantive requirements for punitive damages contained in Minn. Stat. § 549.20 apply. "To meet the substantive requirements for punitive damages under Minnesota law, a party must show—by clear and convincing evidence—that the defendant acted with 'deliberate disregard for the rights or safety of others.'" *Target Corp. v. LCH Pavement Consultants, LLC*, 960 F. Supp. 2d. 999, 1010 (D. Minn. 2013) (quoting Minn. Stat. § 549.20, subd. 1(a)). Deliberate disregard has been statutorily defined to mean "the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights or safety of others." Minn. Stat. § 549.20, subd. 1(b). Derrick argues that an amendment to allow for pleading punitive damages should be allowed because Wade acted with deliberate disregard for his rights, and no other compelling reason exists to deny him the amendment. (Derrick's Mem. 20–25.)

Wade argues that the amendment should not be granted because "there is not a single factual allegation that Wade Girard acted with deliberate disregard," and the factual record precludes a finding of deliberate disregard because the facts Derrick relies on are taken out of "context." (Doc. No. 86, Def. Wade Girard's Mem. of Law in Opp'n ("Wade's Resp.") 18.) Wade also argues "the allegations fail to even support the underlying claims." (*Id.*) Therefore, Wade makes a futility argument, both as to whether deliberate disregard can be found and as to the merits of the underlying claims.[2] (*See id.*

---

[2] Wade makes no argument that Derrick's motion should be denied because of undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party.

6

at 17–34.)

When undertaking a futility analysis the court "look[s] only to the facts alleged in the complaint and construe[s] those facts in the light most favorable to the plaintiff." *Riley v. St. Louis*, 153 F.3d 627, 629 (8th Cir. 1998); *see also Arias v. Am. Family Mut. Ins.*, No. 13-cv-1681 (PJS/JJG), 2013 WL 12145854, at *2 (D. Minn. Oct. 28, 2013) (stating, "[n]o matters outside the pleading may be considered" when conducting a futility analysis under Rules 12(b)(6) and 15). The Court also accepts as true all of the factual allegations in the complaint and draws all reasonable inferences in Plaintiff's favor. *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008).

A futility challenge to a motion to amend a complaint is successful where "claims created by the amendment would not withstand a Motion to Dismiss for failure to state a claim upon which relief can be granted." *DeRoche v. All Am. Bottling Corp.*, 38 F. Supp. 2d 1102, 1106 (D. Minn. 1998); *see also Lunsford v. RBC Dain Rauscher, Inc.*, 590 F. Supp. 2d 1153, 1158 (D. Minn. 2008) (stating that a motion to amend is futile if the amended complaint would not survive a motion to dismiss).[3] To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint

---

[3] Because punitive damages can appropriately be considered a prayer for relief rather than a cause of action, one might argue they are not a claim suited for a motion to dismiss under Rule 12. *See, e.g.*, *Oppenheimer v. Sw. Airlines Co.*, No. 13-CV-260 IEG (BGS), 2013 WL 3149483, at *3 (S.D. Cal. June 17, 2013). Futility of the amendment, however, is the only argument raised by Wade to deny the present motion. Therefore, this Court does not depart from the settled futility framework when analyzing whether the motion to amend to add punitive damages should be granted.

need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Id.* at 556. Whether a complaint states a claim is a question of law. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).

The question here is whether Derrick Girard has pleaded enough facts to plausibly support a claim for punitive damages under Minn. Stat. § 549.20. Some of the relevant facts provided by Derrick in his PACC relating to the actions of Wade, include the following:

- Wade and Derrick jointly created the Software, and at no time prior to their dispute over Wade's equity distributions did Wade claim any personal ownership rights to the Software. (PACC ¶¶ 2, 4, 8, 10, 31, 44, 59, 66.)

- Around the time that the Certificate of Assumed Name for the company was filed with the Minnesota Secretary of State, Derrick and Wade had text discussions about the Software, and Wade affirmatively and specifically agreed that the Software would be a "product of Ionlake." (PACC ¶ 31.)

- Wade acknowledged and represented that Ionlake's sole purpose was the creation, development, and selling of the Software, Ionlake owned the Software, and that the Software was to be developed for the sole and exclusive benefit of Ionlake. (PACC ¶¶ 3, 4, 26, 29, 34, 37, 64.)

- Based on those representations, Derrick invested in Ionlake with both his time and money, declined a lucrative job opportunity so he could focus on Ionlake, and initially allowed Wade to take substantial distributions from Ionlake. (PACC ¶¶ 4, 8, 13, 14, 31, 45, 47, 56, 59, 64.)

- After Wade and Derrick had a disagreement over Wade's distributions to himself from Ionlake and Wade's refusal to adjust his equity ownership in the company further, Wade filed a copyright application claiming that Wade was the author and sole, exclusive owner of the Software, without providing any notice to Derrick or Ionlake. (PACC ¶¶ 9, 10, 67.)

8

- After filing the copyright application, Wade sent a letter to Ionlake claiming that the company was using the Software only because he had allowed Ionlake to "have a royalty-free license to access" his "intellectual property," and then threatened to suspend all access to the Software. (PACC ¶ 67.)

- Wade terminated Ionlake's access to the source code for the Software and refused to turn over Ionlake's computer, logins, and passcodes necessary to fully access and modify the Software, which "paralyzed Ionlake's operations," forcing Ionlake to seek and obtain a TRO. (PACC ¶¶ 10, 67, 71, 72.)

- Wade contacted Ionlake's biggest customer to inform them that he owned the Software personally and that Ionlake had multiple pending lawsuits. (PACC ¶¶ 11, 67.)

- Wade, while claiming to still be a governor of Ionlake, and without telling Derrick or anyone else at Ionlake, formed a separate company to make money selling licenses to clubs and organizations using the Software. (PACC ¶¶ 12, 67.)

These allegations, assumed true as they must be, are sufficient to raise a plausible claim that Wade acted in deliberate disregard of Derrick's rights under Minnesota law. Derrick plausibly alleges that Wade knew the Software was owned by Ionlake, knew that Derrick had invested significantly into Ionlake to develop the business around the Software, and knew of Derrick's equity stake in the company, yet he proceeded to secretly represent to both the copyright office and to Ionlake's customers that the Software was owned exclusively by him, without the agreement of Derrick or Ionlake, to solely benefit Wade and his new company to the detriment of Derrick and Ionlake. At this stage, the Court considers only Derrick's allegations. Whether the evidence will eventually show that Wade's actions were lawful, or that his conduct did not meet the standard of deliberate disregard for Derrick's rights, is a matter to be addressed on

summary judgment when more than just pleadings are considered. Based on the PACC, however, Derrick's allegations give rise to a reasonable inference that Wade deliberately proceeded to act in conscious or intentional disregard of the high degree of probability that he was interfering with Wade's rights. *See Best Buy Stores, L.P. v. Developers Diversified Realty Corp.*, No. 05–2310 (DSD/JJG), 2008 WL 227689, at *2 (D. Minn. Jan. 25, 2008) (affirming magistrate judge's conclusion that Minnesota allows punitive damages for a breach of fiduciary duty); *see also Minn. Timber Producers Ass'ns, Inc. v. Am. Mut. Ins. Co.*, 766 F.2d 1261, 1267–68 (8th Cir. 1985) (concluding that fiduciary relationship did not exist but suggesting that breach of fiduciary duty would support punitive damages); *see also Target*, 960 F. Supp. 2d at 1011 (granting motion for leave to amend to seek punitive damages based on a fraud claim); *Sullivan v. Ouimet*, 377 N.W.2d 24, 26–27 (Minn. Ct. App. 1985) (sustaining punitive damages in favor of an investing shareholder based on a finding that the defendant fraudulently induced the plaintiff to loan money and because defendant's acts were willful and wanton and in disregard of the plaintiff's rights). Simply put, because of the facts alleged, the Court cannot conclude that Derrick's claim for punitive damages would be futile. Therefore, the Court grants Derrick's motion.[4]

---

[4] Wade asserts that Derrick's allegations are disputed by other evidence and disputes whether Derrick has viable claims for fraud or breach of fiduciary duty for various reasons. Such arguments are outside of the Court's inquiry on a pleading motion such as this but may be raised later by summary-judgment motion. *See Tholen v. Assist Am. Inc.*, No. 17-cv-3919 (DWF/SER), 2018 WL 3848434, at *3 (D. Minn. Aug. 13, 2018) (granting leave to amend to assert punitive damages and finding the parties' arguments were "best left for summary judgment where the benefit of a fully developed factual record and more fulsome briefing of the legal issue will allow the Court to address

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY ORDERED** that:

1. Derrick Girard's Motion to Amend Counterclaim to Plead Punitive Damages Against Wade Girard (Doc. No. 82) is **GRANTED**.

2. On or before **February 24, 2021**, Derrick Girard shall file an Amended Counterclaim in a substantially similar form as the Proposed Amended Counterclaim filed in support of his motion (*i.e.*, Doc. No. 84, Ex. X).

Dated: February 18, 2021

*s/ Becky R. Thorson*
BECKY R. THORSON
United States Magistrate Judge

---

the specific legal implications of the facts as applied to the law"). Nothing in this Order bars Wade from challenging the alleged facts and asserting legal defenses to all claims as the case progresses.